Argued April 12, reversed July 31, 1928.

## L. J. SWANSON *v.* J. F. DUFFY.

(269 Pac. 865.)

For appellant there was a brief and oral arguments by *Mr. Samuel B. Weinstein* and *Mr. Alfred P. Dobson.*

For respondent there was a brief and oral argument by *Mr. Thomas G. Ryan.*

RAND, C. J.—This is an action at law to recover attorney's fees for services performed by plaintiff's assignor in the foreclosure of a mortgage given by the Quality Mill and Lumber Company, a corporation, to defendant, J. F. Duffy. After the cause had been appealed, Duffy died and, on motion of appellant, J. E. Duffy, as administrator of the estate of decedent, was substituted as respondent herein.

The facts material to the questions involved are: Alfred P. Dobson, plaintiff's assignor, and Robert Krims were copartners engaged in the practice of law at Portland, Oregon, and Duffy and Krims had had numerous business relations with each other which were wholly outside of the partnership business of Dobson and Krims. In addition to that, Duffy had been at times a client of the firm. Dobson and Krims each had some financial interest in the Quality Mill and Lumber Company. What Krims' interest was the evidence does not disclose, but Dobson had a few shares of its stock and was the president of the company. The corporation was in need of money and both Dobson and Krims talked with Duffy about making a loan to the company, one or both of them going

over the corporate property with him. Duffy loaned the company the sum of $12,500 and took the company's note and a mortgage upon the corporate property therefor. The note and mortgage are both dated January 30, 1920. On February 3, 1920, Krims handed Duffy the following letter, purporting to have been signed by the firm and written on a letterhead of the firm:

"February 3rd, 1920.
"J. F. Duffy, Esq.,
    "Portland, Oregon.
"Dear Sir:
   "Confirming our conversation with you of Saturday, January 31st, relative to the loan made by you to the Quality Mill & Lumber Company in the aggregate sum of $12,500.00, we do hereby guarantee the payment of the said note issued to your order, as aforesaid, by the said Quality Mill & Lumber Company, and, in the event of any default in the performance of any of the conditions on the part of the said Quality Mill & Lumber Company with respect to the payment of said note, we will take an assignment of the same, and reimburse you to the extent of any moneys which may be due from the said Quality Mill & Lumber Company at that time.
                "Very truly yours,
                        "DOBSON & KRIMS,
                        "By ROBT. KRIMS."

The corporation made certain part payments of the note and then defaulted as to the remainder. After such default, Duffy took the mortgage to the office of Dobson and Krims for the purpose of having the same foreclosed and, while there, assigned the note to Krims for the purpose of collection only and not for value. According to defendant's testimony, Dobson was not present at the time and had no conversation with defendant in respect to the

foreclosure of the mortgage, while Dobson testified that he was present and that defendant employed him to foreclose the mortgage for defendant. The foreclosure suit was instituted in the name of Krims with defendant's full knowledge and consent and pursuant to such assignment and the suit was conducted and the mortgage foreclosed by Dobson. Acting as attorney in the suit, Dobson secured a decree of foreclosure for the full amount then due, namely: $8,900 principal, $482.83 interest, $500 attorney's fees, and $20.55 costs and disbursements, and the decree directed the sale of the mortgaged property in satisfaction of said amounts. Subsequently an execution was issued on said decree and the mortgaged property was bid in by Duffy and sold to him in full satisfaction of the entire amount specified in the decree. Later the sale was confirmed and, after the time of redemption had expired, a sheriff's deed for the mortgaged property was executed and delivered to Duffy. Duffy then sold the property to a third party for $25,000, but he failed and refused to pay Dobson for his said services. Dobson assigned the claim to plaintiff who brought this action to recover the $500 attorney's fees which were allowed by the court in the foreclosure proceedings.

The complaint sets forth that the services were performed by Dobson under an express contract entered into by Dobson and Duffy, by the terms of which Duffy expressly employed Dobson to act as attorney in the foreclosure of the mortgage and agreed to pay him for such services such sum as the court in said foreclosure suit should adjudge to be reasonable attorney's fees, and that Dobson performed the services

contracted for and that in the suit the court decreed that $500 was a reasonable sum to be allowed as attorney's fees and gave decree accordingly, and also alleges the failure and refusal of Duffy to pay plaintiff or her assignor the said sum allowed by the court, or any part thereof, and demands judgment for that amount.

The answer contains both denials and new matter and sets up as an affirmative defense that both Dobson and Krims stated to defendant "that they would guarantee that said loan would be a safe loan," and that the amount thereof "would be repaid to defendant together with interest thereon," and that defendant "would be indemnified and saved harmless from any loss by reason of making said loan," and that Dobson and Krims "would take care of any legal formalities or business incident to the making of said loan or the return to your defendant of said sum of $12,500," and that defendant "would not be put to any expense whatsoever in the making or collection of said loan for professional advice or legal services all of which would be attended to and cared for by said Alfred P. Dobson and Robert Krims without any cost whatsoever" to defendant. It then alleges that, relying upon such representations, defendant made the loan to the corporation and that, acting upon the advice of Dobson and Krims, defendant assigned the note and mortgage to Krims "who through Alfred P. Dobson, as his attorney, filed the suit to foreclose said note and mortgage against said corporation," and prosecuted the suit to decree; that the suit was "so prosecuted, maintained and concluded by them, the said Alfred P. Dobson and Robert Krims, with the express understanding and agreement that your defendant was not to pay for or be

liable for any expenses in connection therewith,'' and that said services ''were rendered by said Alfred P. Dobson pursuant to his agreement to see to it that your defendant would be indemnified and saved harmless of and from any costs or expenses whatsoever incident to or connected with said loan.'' This new matter was put in issue by the reply.

Upon the trial Mr. Dobson was called as a witness in plaintiff's behalf and, on cross-examination, Defendant's Exhibit 1, which is the letter above referred to, was presented to him by counsel for defendant and, in answer to questions propounded to him by defendant's counsel, he stated that the signature to the letter was in the handwriting of Krims. The letter was then offered in evidence by defendant's counsel without any showing whatever that Dobson ever assented to the letter or had any knowledge that it had been written, or that Krims had any authority to bind Dobson to the terms contained in it, and it was received and admitted in evidence over plaintiff's objection and exception, and its admission is now assigned as error. Plaintiff also assigns as error the refusal of the court to direct a verdict for plaintiff at the close of the trial.

■ That the admission of the letter was prejudicial clearly appears from the record of the trial. Only two witnesses were called, namely: Dobson on behalf of plaintiff and defendant in his own behalf. Dobson testified that he never knew of the existence of this letter until later told of it by Duffy, and Duffy testified that he had never had any conversation with Dobson in respect to the foreclosure of the mortgage and that the letter was handed to him by Krims. Not only that, defendant based his entire defense upon the terms of the letter and contended that,

because of the letter, Dobson had agreed to perform these services gratuitously. The rule is as stated in 20 R. C. L., Section 110, page 899:

"A member of a partnership has no authority to guarantee negotiable paper in the firm name, or to make contracts of guaranty or suretyship, without authority specially given him for the purpose, or implied from the common course of the business of the firm, or from the previous course of dealing between the parties, unless the act of such partner is afterwards ratified by his copartners. For example, a partner who, without authority, agrees to indemnify a surety on an injunction bond, given in a suit prosecuted for the benefit of the firm, does not thereby bind the firm unless his copartners subsequently ratify his act. And a partner cannot bind his copartners, without their assent, by signing the firm name as sureties on the note of a third person. Where a partner indorses the firm name as surety for a third person, without the consent or knowledge of his copartners, the firm is not bound, and it lies with the indorsee to prove the partner's authority for so using the partnership name, and the mere fact that the indorsee had no knowledge, express or implied, of the partner's want of authority will not be sufficient to charge the firm."

■■ In the absence of a proper showing, the admission of this letter in evidence was reversible error.

We will now consider the other assignment of error, namely, the failure of the court to direct a verdict for plaintiff. As we have said, the whole defense was based upon the terms of the letter for, regardless of the averment in the answer that Dobson agreed to foreclose the mortgage without charge, Duffy testified that he never had any conversation with Dobson about that matter whatsoever and his was the only testimony offered by defendant, and

Dobson testified that he had never made any such agreement with anyone. While Krims might have agreed to perform these services personally without compensation, he could not, without Dobson's assent, bind Dobson to do so. To work without compensation, unless assented to by all of the partners, is not a part of a partnership business, nor within the scope of the partnership business. Again, the letter, if it had been binding upon all of the members of the firm because previously assented to or later ratified by all, did not contemplate what was admittedly done in the foreclosure suit. The agreement contained in the letter, if it was binding upon the partnership, was that the partnership should guarantee payment of the note and that if the note was not paid Duffy should assign it with the mortgage to the partnership and the partnership should then reimburse Duffy for all that was due him from the corporation without any cost or expense to him whatsoever. According to the allegations of the answer and the testimony of Duffy, there was no attempt made by either party to carry out the terms of the contract. On the contrary, the contract was abandoned by both sides. Duffy never assigned these papers to the partnership and never demanded his money back. He assigned the note and mortgage to Krims, not for the purpose of being reimbursed but for the purpose of collection and the assignment was made, as the uncontradicted evidence shows, in order to keep his wife from finding out that he had made the loan and, when the mortgage had been foreclosed, he bid in the mortgaged property for himself which he would not have done if he had been attempting to carry out the contract. When he bid in the property he bid it in not only for the amount which was due to himself but he bid it in for

the amount which had been allowed on account of Dobson's services as attorney in the case. According to his own testimony, he sustained no loss in the transaction but made a very large amount of money from his loan. He stands, therefore, in the position of one who has received money for another's use and has failed to pay it over to the party entitled to it and, when sued, under the facts admitted and proven in the case, he had no defense to its recovery.

The motion for a directed verdict should, therefore, have been allowed and, for the reasons stated, the judgment appealed from will be reversed and the cause will be remanded, with directions to enter a judgment for plaintiff as prayed for in the complaint.

REVERSED AND REMANDED.

COSHOW, MCBRIDE and ROSSMAN, JJ., concur.